**The PEOPLE of the State of Colorado, Complainant,**

v.

**Mitchell M. GELLER, Attorney–Respondent.**

**No. 88SA73.**

Supreme Court of Colorado, En Banc.

April 25, 1988.

Linda Donnelly, Disciplinary Prosecutor, Denver, for petitioner.

Rowe P. Stayton, Denver, for attorney-respondent.

MULLARKEY, Justice.

In this attorney disciplinary proceeding, a hearing panel of the Supreme Court Grievance Committee has recommended that the respondent, Mitchell M. Geller (Geller), be suspended for a period of three years subject to certain conditions and that he be ordered to pay the costs of the proceeding. Neither the respondent nor the disciplinary prosecutor has filed exceptions to this recommendation. We accept the recommendation with the modifications noted below.

I.

Geller was admitted to practice in Colorado in 1979 and is subject to the jurisdiction of this court and its grievance committee. In the proceeding below, the committee found by clear and convincing evidence that Geller committed three acts of professional misconduct in violation of our rules

concerning discipline of attorneys and the Code of Professional Responsibility.

## A.

On March 1, 1986, Geller was arrested and charged with unlawful distribution and possession of a controlled substance (cocaine). Subsequently he pled *nolo contendere* to a reduced charge of unlawful use of a controlled substance, schedule II, in violation of section 18–18–104(1)(a), 8B C.R. S. (1986), which is a class 5 felony. He served ninety days work release in the Arapahoe County Jail and was placed on probation for a period of two years beginning on April 23, 1987. This court temporarily suspended Geller from the practice of law pursuant to C.R.C.P. 241.8 and 241.-16 on August 13, 1987. Geller's conduct violated C.R.C.P. 241.6(1), (2), (3), and (5).[1] It also violated C.R.C.P. 241.16 (attorney convicted of a crime) and the Code of Professional Responsibility DR 1–102(A)(1) (violation of a disciplinary rule) and DR 1–102(A)(6) (conduct adversely reflecting on fitness to practice law).

## B.

The second count concerned Geller's representation of a client charged with driving while his ability was impaired. Prior to his arrest on the cocaine charges, Geller failed to appear at a scheduled court hearing for this client and failed to advise his client of the scheduled trial date. After his arrest, Geller resigned from his employment with his law firm and discontinued representing any clients. However, he did not file a motion to withdraw, did not advise his client to obtain substitute counsel and did not otherwise advise the court that he was no longer representing his client. He also failed to return the unearned portion of the retainer which his client had paid to him. When neither Geller nor his client appeared for trial and the clerk was unable to reach Geller, a bench warrant was issued for his client's arrest. His client responded to the bench warrant, had Geller removed as his attorney, and entered a guilty plea to reckless driving. After a grievance was filed in this matter, Geller tendered a refund of the balance of client's retainer.

The respondent's conduct violated C.R.C. P. 241.6(1) and (4) and the Code of Professional Responsibility, DR 2–110(A)(1) (withdrawal from employment without court permission), DR 2–110(A)(2) (requiring reasonable steps to avoid foreseeable prejudice to the client when attorney withdraws), DR 2–110(A)(3) (prompt refund of unearned fees upon withdrawal from employment), DR 6–101(A)(3) (neglect of a legal matter), DR 7–101(A)(1) (failure to seek lawful objectives of client), and DR 7–101(A)(2) (failure to carry out contract of employment with client).

## C.

In the third count, the respondent negotiated a settlement for a client in a wrongful discharge case. He deposited the employer's settlement check in the amount of $12,-700 in his business account rather than his trust account and, pursuant to his contingency fee agreement with the client, forwarded her a check for $9,109. Because Geller was in default on a personal loan, the bank offset the entire amount of the

---

1. C.R.C.P. 241.6 provides in part as follows:

    Misconduct by a lawyer, individually or in concert with others, including the following acts or omissions, shall constitute grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship:

    (1) Any act or omission which violates the provisions of the Code of Professional Responsibility;

    (2) Any act or omission which violates accepted rules or standards of legal ethics;

    (3) Any act or omission which violates the highest standards of honesty, justice, or morality;

    (4) Any act or omission which constitutes gross negligence, if committed by a lawyer in his capacity as a lawyer;

    (5) Any act or omission which violates the criminal laws of this state or any other state, or of the United States; provided that conviction thereof in a criminal proceeding shall not be a prerequisite to the institution of disciplinary proceedings, and provided further that acquittal in a criminal proceeding shall not necessarily bar disciplinary action;

    . . . .

deposited check and the check to his client was not paid. His client retained counsel who wrote a demand letter to Geller. The new counsel also contacted Geller's former law firm which then filed a grievance against Geller. Within about three months after the check to his client had been returned for insufficient funds, Geller made full restitution to the client. The committee found that Geller did not intend to convert his client's funds but that he wrongly commingled the client's funds with his own. The respondent's conduct in this regard violated C.R.C.P. 241.6 (grounds for discipline) and the Code of Professional Responsibility DR 1–102(A)(1) (violation of a disciplinary rule) and DR 9–102(A) (deposit of client funds).

## II.

The committee found that Geller began his use of cocaine on an occasional basis, believing that cocaine use should not be illegal, that he was in total control and that his cocaine usage did not affect his work performance. His usage increased to as much as one gram per day and the committee concluded that his misconduct in counts 2 and 3 was related to his cocaine addiction.

Absent aggravating or mitigating circumstances, each of the three counts would warrant the respondent's suspension from practice under the *ABA Standards for Imposing Lawyer Sanctions* (1986). *See* Standard 5.12 (knowingly engages in criminal conduct that seriously adversely reflects on the lawyer's fitness to practice); Standard 4.42(b) (engages in pattern of neglect causing injury to client); and Standard 4.12 (knows or should know he is dealing improperly with client's property causing injury to client).

Both aggravating and mitigating factors are present here. Among the aggravating factors is Geller's prior disciplinary offense involving a letter of admonition for his failure to properly advise and consult his client before deciding not to petition for rehearing and certiorari in an appeal. *See* Standard 9.22(a). The case now before this court involves a pattern of misconduct related to his drug usage and multiple offenses involving different clients. These are aggravating factors under Standards 9.22(c) and (d).

The committee also found the presence of several mitigating factors. First, it credited testimony that the respondent was an outstanding young trial attorney who was a "very caring person who brought his best to representation of his clients." *See* Standard 9.32(g). Second, the committee found that the respondent suffered from depression caused by work pressures and financial and personal problems which contributed to his increased use of cocaine. *See* Standard 9.32(c). Third, after his arrest, the respondent engaged in treatment for his cocaine usage and his emotional problems. His therapist testified that Geller had remained consistently free from drug usage since approximately April 1986. At the time of the hearing, Geller was engaged in performing legal research for attorneys who testified that his work was as careful and capable as it had been prior to his drug involvement. Thus, the committee concluded that he had reformed his conduct and did not pose a danger to the public. *See* Standard 9.32(j). Finally, the committee observed that Geller did not act from a dishonest motive and that he fully cooperated with the grievance process. *See* Standards 9.32(b) and (e). We do not consider Geller's repayments to his clients to be mitigating factors because both were compelled after the client had made demand through new counsel and/or filed a grievance. *People v. Wolfe,* 748 P.2d 789 (Colo.1988); Standard 9.4(a).

## III.

After weighing the aggravating and mitigating factors present in this case, we now order the respondent suspended from the practice of law for a period of three years from the date of this order. At the expiration of that period he may apply for reinstatement pursuant to C.R.C.P. 241.22(c). Since this case involved illegal drug use and emotional problems necessitating psychotherapy, we emphasize that the respondent must demonstrate in his petition for reinstatement that he is mentally stable

and morally and ethically qualified for admission to practice under C.R.C.P. 201.6, as incorporated by reference in C.R.C.P. 241.-22(c)(3). The committee has discretion to require a medical evaluation pursuant to C.R.C.P. 201.6(2).

We decline to impose additional requirements on the respondent during his period of suspension because, if he seeks reinstatement, it is the respondent's burden to show that he has been rehabilitated and is fit to practice law. We likewise decline to require the respondent to continue in therapy for a period of time after he is reinstated. Whether such a requirement would be appropriate cannot be determined until such time as the respondent demonstrates he meets the requirements for reinstatement.

For these reasons, the respondent is suspended from the practice of law for a period of three years, effective as of the date of the issuance of this opinion. The respondent is ordered to pay the costs of these proceedings in the amount of $156.95 within thirty days from this date by tendering that sum to the Supreme Court Grievance Committee, 600 17th Street, Suite 500–S, Denver, Colorado 80202.