In the Matter of the Application for the DISCIPLINE OF Richard A. JOHNSON, an Attorney at Law of the State of Minnesota.

No. C6–86–212.

Supreme Court of Minnesota.

Oct. 23, 1987.

Richard A. Johnson, Minneapolis, for appellant.

William J. Wernz, Director, Kenneth L. Jorgensen, Asst. Director, Office of Lawyers Professional Responsibility, St. Paul, for respondent.

## PER CURIAM

Although the respondent Richard C. Johnson admitted service of a petition in which the Director of Minnesota Lawyers Professional Responsibility alleged he had violated terms of a previously imposed and existing attorney discipline probation by additionally committing during the course of that probation acts constituting violation of the income tax laws—in and of themselves constituting attorney misconduct— he failed to either deny the allegations by answer or otherwise to controvert the charges contained in the petition. Such failure bears the consequence that all of the petition's allegations are deemed admitted.[1] Thus, there remains for this court only the imposition of appropriate discipline. Not only to remain consistent with, and to reaffirm, this court's traditional view that violation of the tax laws merits the imposition of serious attorney discipline, but additionally in this case, because some of the respondent's violations oc-

curred while he was already in a disciplinary probation status, the imposition of more onerous sanctions than normally imposed is indicated. We, therefore, indefinitely suspend Richard A. Johnson from the practice of law and preclude the filing of any application for reinstatement before the expiration of 18 months from the date of this opinion.

Respondent Johnson was first admitted to the practice of law in this state in 1973. Charges against him of unprofessional conduct first came to the attention of the Lawyers Professional Responsibility Board in 1982 when Johnson admitted failure to render prompt accounting to a client in violation of DR 1–102(A)(6) and DR 9–102(B)(3) Minnesota Code of Professional Responsibility (MCPR), and further admitted failure to maintain trust account books and records as required by DR 9–102(A), DR 9–103(A), MCPR[2] and Opinion 9 of the Lawyers Professional Responsibility Board. On that occasion Johnson was privately reprimanded and required to complete certain conditions to bring his trust account back into compliance with legal requirements.

In 1985 Johnson admitted a client complaint made to the Lawyers Professional Responsibility Board alleging that he had repeatedly failed to pursue the client's personal injury action and had failed to properly communicate with the client in violation of DR 6–101(A)(3) and DR 7–101(A)(1) and (2), MCPR. He likewise admitted failure to timely provide written communications to the Director's office in violation of DR 1–102(A)(5) and (6), MCRP and Rule 25, Rules of Lawyers Professional Responsibility. As a result of these admitted disciplinary transgressions, Johnson, by stipulation, was placed on a two-year private supervised probation pursuant to Rule 8(c)(3),

---

1. Rule 13(c), RLPR reads: "**Failure to file.** If the respondent fails to file an answer within the time provided or any extension of time this Court may grant, the petition's allegations shall be deemed admitted and this Court may proceed under Rule 15." This court, on July 22, 1987, filed an order deeming the allegations in the petition to be admitted.

2. Prior to and including August 31, 1985, the Minnesota Code of Professional Responsibility, adopted by this court August 4, 1970, contained

the standards of professional responsibility for lawyers admitted to practice in Minnesota. By custom, that Code is cited in our cases as MCPR. In matters having genesis prior to September 1, 1985, the professional standards referred to will be cited MCPR. For those matters occurring after September 1, 1985, the professional standards governing Minnesota lawyers are contained in Minnesota Rules of Professional Conduct cited herein MRPC.

Rules of Lawyers Professional Responsibility (RLPR).

Less than a year later an additional complaint originating with the same client, resulted in a further petition seeking disciplinary action. This petition alleged violation of the previously imposed probation and also alleged Johnson's failure to cooperate with the supervisor appointed to monitor his probation. Johnson again admitted these allegations, stipulated to continued supervised probation, and accepted a public reprimand. By court order then entered in 1986, Johnson's supervised probation was continued for an additional two years.

The first count of the present disciplinary petition, after reciting Johnson's disciplinary history, additionally alleges that Johnson failed to timely file his Minnesota individual income tax returns for 1981, 1983, 1984, and 1985—years in which respondent had sufficient personal income to require personal filings.[3] Because those allegations are deemed admitted for failure to answer and by virtue of our July 22, 1987 order, Johnson's failure to timely file 1981 and 1983 Minnesota individual income tax returns and to pay taxes due violated DR 1–102(A)(5) and (6), MCPR and *In re Bunker*, 294 Minn. 47, 199 N.W.2d 628 (1972). Similar failure to file 1984 and 1985 returns violated Rules 8.4(b) and (d), MRPC, *In re Bunker*, and the terms of respondent's disciplinary probation.

By failing to answer the second count of the present complaint, Johnson admits that during a period from 1984 to 1987, he was a partner in a law firm which had two employees. As an employer, Johnson was required by Minn.Stat. § 290.92 (1986) to timely file Minnesota quarterly employer's withholding tax returns. Johnson failed to file the quarterly income tax withholding return for the quarter ending March 30, 1984 until March 6, 1986, and failed to file any income tax withholding returns for employees for quarters ending June 30, 1984, through and including December 31, 1986— even though he withheld taxes from the employees during those quarters. In other words, Johnson collected the withholding taxes but neither filed the required returns or paid the amounts that had been withheld to the state. Those failures occurring before September 1, 1985, violated DR 1–102(A)(5) and (6), MCRP as well as our holding in *In re Bunker*, 294 Minn. 47, 199 N.W.2d 628 (1972). His failure to properly file and pay after September 1, 1985, violated Rule 8.4(b) and (d), MRPC, *In re Bunker*, and the terms of respondent's disciplinary probation.

This court has traditionally viewed failure to file tax returns as warranting stringent lawyer discipline.[4]

The bar of this state has been on notice at least since 1972 that failure to file personal individual income tax returns has subjected the delinquent attorney to almost certain disciplinary sanctions. *In re Bunker*, 294 Minn. 47, 53–55, 199 N.W.2d 628, 631–32 (1972). That we still consider such failure to file personal income tax returns as a violation of the Code, and now the Rules, of Professional Responsibility is convincingly demonstrated by such cases as *In re Knutson*, 405 N.W.2d 234 (Minn.1987); *In re Shaw*, 396 N.W.2d 573 (Minn.1986); *In re Piper*, 387 N.W.2d 882 (Minn.1986); *In re Jones*, 383 N.W.2d 686 (Minn.1986); *In re Anastas*, 368 N.W.2d 271 (Minn. 1985); *In re McCallum*, 366 N.W.2d 100 (Minn.1985); *In re Larson*, 324 N.W.2d 656 (Minn.1982); *In re Serstock*, 316 N.W.2d 559 (Minn.1982). Ever since *In re Bunker* we have repeatedly noted that the most

---

**3.** At oral argument respondent contended that either in some of those years he owed no tax, or was entitled to refunds. This court, of course, was not presented with proof to substantiate those allegations. Because of his failure to answer the Director's petition and this court's order, we must accept the fact that he had sufficient personal income to require filing and further that he failed to make the filing. The petition does reveal respondent was entitled to a refund on his 1985 late filed return.

**4.** At the outset, we note that the suggestion that lawyers may not be subject to discipline for violations of the MCPR, the effect of which terminated with the repeal August 31, 1985, is not well taken. Attorneys have been disciplined under MCPR for conduct occurring prior to that repeal. *In re Knutson*, 405 N.W.2d 234, 237 (Minn.1987). When the conduct has spanned a period of time during part of which the MCPR was in effect, and during the other part the MRPR was in effect, we have used both. *See e.g., In re Selb*, 395 N.W.2d 81, 82 (Minn.1986).

appropriate discipline in tax misconduct cases is suspension, and, in some cases disbarment. *See, e.g., In re Jones,* 383 N.W.2d 686, 688 (Minn.1986). Disciplinary probation is rarely considered an appropriate alternative to suspension or disbarment, and then only when there have existed extreme extenuating circumstances in mitigation. Very rarely, on an ad hoc basis, we have granted limited and strictly regulated probation in the presence of such mitigation circumstances as illness, chemical dependency, or depression which have clearly been the productive cause of the income tax violation. *See, e.g., In re McCallum,* 289 N.W.2d 146 (Minn.1980); *In re Kerr,* 287 N.W.2d 652 (Minn.1979); *In re Knutson,* 405 N.W.2d 234 (Minn. 1987). Here, respondent Johnson has completely failed to advance any evidence to support any claim justifying mitigation of the usual discipline of suspension.

But respondent Johnson's income tax law violations were not confined only to failure to file or pay his personal individual income taxes. Instead, the seriousness of the violations was compounded by his failure, as an employer, to file quarterly withholding tax statements showing taxes withheld from his employee's wages, and by failure to timely pay the amount so withheld to the government. These failures, in effect, permitted him to use money belonging either to the employee or to the state for his own use—in short converting money, even if temporarily, to which he was not entitled. Fifteen years ago in *In re Bunker,* while noting that violation of income tax laws present a real danger to continuance of governmental functions, we also observed that such a violation contravenes the lawyer's oath to uphold the laws thereby meriting the strictest condemnation and discipline. More recently, we repeated that warning. *In re Knutson,* 405 N.W.2d 234, 237 (Minn.1987). Moreover, Johnson, by failing to pay over employee withholding tax undoubtedly violated Minn.Stat. § 290.-92, subd. 6a(d) (1986). Even though Johnson has not been criminally charged for violation of that statute, we may still impose discipline for illegal actions in violation thereof. *See, e.g., In re Hanratty,* 277 N.W.2d 373, 375 (Minn.1979).

The Director's contention, that Johnson's failure to timely file withholding tax returns and timely pay the taxes bears more significantly upon his professional competency than does his failure to properly handle his personal individual tax matters, is not meritless. Notwithstanding that withholding tax violations do not arise out of nor affect the attorney-client confidential relationship, the violations are directly related to the operation of his law practice and may well reflect upon the seriousness with which he regards his professional obligation in handling other people's money. While we have never addressed the precise issue, we note the Michigan Supreme Court considered an attorney's failure to pay withholding taxes of an employee a form of "misrepresentation and fraud" warranting a period of suspension. *Grievance Administrator v. Nickels,* 422 Mich. 254, 262, 373 N.W.2d 528, 531 (1985). Likewise, Maryland, which has statutes similar to our tax statutes imposing criminal failure to report and remit withholding taxes, suspended a lawyer for a lengthy period for violating those statutes. *Attorney Grievance Commission of Maryland v. Baldwin,* 308 Md. 397, 519 A.2d 1291, 1297 (1987).

Failure to timely file and pay his individual income taxes, combined with his failure to timely file returns or timely pay employee withholding taxes, while at all times under supervised probation requiring compliance with the Minnesota Rules of Professional Conduct, merits indefinite suspension from the practice of law with no right to apply for reinstatement prior to the expiration of 18 months from the date of this opinion and then only after providing proof that all federal and state tax liabilities have been settled, that all provisions of Rule 18, Rules of Lawyers Professional Responsibility have been complied with and that respondent shall have paid costs in the amount of $750.

SCOTT, J., took no part in the consideration or decision of this case.