In re Petition for DISCIPLINARY ACTION AGAINST Norman K. GURSTEL, an Attorney at Law of the State of Minnesota.

No. C9–93–1390.

Supreme Court of Minnesota.

Dec. 22, 1995.

Marcia A. Johnson, Director, Martin A. Cole, Sr. Asst. Director, Office of Lawyers Professional Responsibility, St. Paul, for appellant.

Michael J. Hoover, Minneapolis, for respondent.

## OPINION

PER CURIAM.

At the direction of a panel of the Lawyers Professional Responsibility Board, the Director of the Office of Lawyers Professional Responsibility filed with this court a petition for disciplinary action against Norman K. Gurstel. The petition for disciplinary action relates to Gurstel's failure to timely file state and federal employer's withholding tax returns and to pay the withholding taxes when due. The petition for disciplinary action alleged that Gurstel violated Rules 8.4(b) and 8.4(d) of the Minnesota Rules of Professional Conduct.

The referee appointed by the Minnesota Supreme Court to hear this matter filed with this court his Findings of Fact, Conclusions of Law, and Recommendation for Discipline. The referee concluded that Gurstel's failure to timely file state employer's withholding tax returns and to pay the state withholding taxes when due violated Minn.R.Prof. Conduct 8.4(b) and (d). The referee also concluded that Gurstel's failure to timely file federal employer's withholding tax returns and to pay the federal withholding taxes when due violated Minn.R.Prof. Conduct 8.4(d). The referee recommended that Gurstel be suspended from the practice of law for a minimum of 60 days, and that he comply with all reinstatement requirements of Rule 18, Rules on Lawyers Professional Responsibility (RLPR). We conclude that Gurstel's failure to timely file federal and state employer's withholding tax returns and to pay the withholding taxes when due violated Rules 8.4(b) and (d) of the Minnesota Rules of Professional Conduct, and we agree with the referee's sanction recommendation.

Norman K. Gurstel was admitted to the practice of law in 1962. He began working as a sole practitioner in 1971, specializing in commercial and family law. Gurstel's current practice consists primarily of the collection of debt owed by businesses and individuals in Minnesota to businesses and individuals located outside the state. His practice changed in 1991 from a sole proprietorship to a professional corporation. He is currently the principal shareholder in the law firm of Gurstel & Associates, P.A., Minneapolis, Minnesota.

On August 20, 1993, Gurstel was placed on two years probation for various trust fund violations and for misrepresentations to a client concerning a collection matter. *In re Gurstel,* 504 N.W.2d 474 (Minn.1993). Gurstel is currently subject to that probation and is in compliance with the specific probationary conditions dealing with trust account maintenance. On November 23, 1994, the Director served upon Gurstel a petition for revocation of probation and for further disciplinary action, based on Gurstel's alleged failure to timely file state and federal employer's withholding tax returns and to pay the taxes when due.

After a contested hearing on May 8, 1995, the referee found that Gurstel failed to timely file state employer's withholding tax returns for 1993. Because Gurstel failed to timely pay state withholding taxes, the state filed tax liens against him and his law firm. In April of 1994, Gurstel entered into a pay-

ment agreement with the Minnesota Department of Revenue (MDOR) to pay $20,626.77 in tax, penalties and interest. He was unable to comply with the terms of the payment agreement. Gurstel subsequently reached a new agreement with MDOR and made the final payment of delinquent taxes to MDOR on May 3, 1995.

The referee also found that Gurstel failed to timely file federal employer's withholding tax returns. Because Gurstel was unable to timely pay federal withholding taxes, tax liens were filed against him and his law firm. His outstanding federal tax liability was in excess of $300,000. Gurstel made an offer in compromise to the IRS to pay $120,000, $115,000 by Gurstel & Associates, P.A., and $5,000 by Gurstel personally. The IRS accepted this offer in compromise. At the time of the hearing before the referee, the final payment of the offer in compromise had not been made to the IRS.[1]

The referee concluded that Gurstel's failure to timely file state employer's withholding tax returns and to pay the state withholding taxes when due violated Minn.R.Prof. Conduct 8.4(b) and (d). The referee also concluded that Gurstel's failure to timely file federal employer's withholding tax returns and to pay the federal withholding taxes when due violated Minn.R.Prof. Conduct 8.4(d). The referee recommended that Gurstel be suspended from the practice of law for a minimum of 60 days, and be required to comply with all reinstatement requirements of Rule 18 and the requirements of Rules 24 and 26, RLPR.

## I.

Gurstel challenges the referee's findings of fact, conclusions of law, and recommended discipline. Because Gurstel timely ordered a transcript pursuant to Rule 14(e), RLPR, the referee's findings are not conclusive. In disciplinary hearings, the standard of review for this court is whether the referee's findings and conclusions were clearly erroneous. *In re Pyles,* 421 N.W.2d 321, 325 (Minn.1988). While this court places great weight on the disciplinary recommendations made by the referee, the final re-

sponsibility for determining appropriate discipline rests solely with this court. *In re Schmidt,* 402 N.W.2d 544, 545 (Minn.1987).

Gurstel first argues that the referee erroneously failed to consider "substantial evidence"—essentially his testimony and that of his office manager—that the returns were timely filed. Gurstel argues that the referee erroneously failed to consider his testimony regarding the state withholding tax returns. The state returns for the first and second quarters of 1993 were completed on MDOR Employers' Withholding Delinquency forms sent to Gurstel because MDOR allegedly did not receive his original returns. Gurstel testified that when he received these withholding delinquency forms, he took the office copies of the original returns, copied the information contained therein, signed and dated the withholding delinquency forms on January 19, 1994, and mailed them to MDOR. Gurstel argues that because MDOR "lost" the original returns, MDOR records erroneously show the dates MDOR received the withholding delinquency forms, not the dates Gurstel claims to have sent the original returns. Gurstel offered no evidence other than his own testimony in support of his theory that MDOR lost his returns. We note, however, that although on probation, he did nothing to follow up on MDOR's alleged loss of his returns other than to complete and mail the withholding delinquency forms. While bureaucratic snafus do occur, we conclude that the referee was justified in discounting Gurstel's testimony.

Gurstel's office manager testified that she would always prepare the employer's withholding tax returns, present them to Gurstel, see that they were signed prior to the due dates, and mail them on a timely basis. She testified that the failure to timely file one of the returns may have been due to a mail clerk inadvertently changing the month on the postal meter, thus "fudging" the postmarked date. On cross-examination, she agreed that it was mere speculation that the postal meter was "fudged," indicated that she was unaware of any other mail that was postmarked incorrectly, and conceded that she could lose her job if Gurstel was suspended. Due to the obvious problems with

---

1. As of the date of argument before this court, November 8, 1995, the IRS had been paid in full.

the office manager's testimony, we conclude that the referee was justified in discounting her testimony.

Gurstel next asserts that several of the referee's factual findings were erroneous. Gurstel argues that the referee erroneously relied on MDOR records to determine filing dates and failed to consider substantial evidence that the returns were timely filed. Gurstel notes that one MDOR letter submitted to the referee contained three erroneous filing dates. Gurstel contends that because this letter contained errors, MDOR records are not reliable evidence, and it was improper for the referee to conclude that MDOR records are authoritative in determining the filing dates.

■ Gurstel's argument that the referee erroneously relied on MDOR records in determining filing dates lacks merit. Counsel for the Director brought the errors in the MDOR letter to the attention of the referee, who adopted the correct filing dates in his findings. Gurstel thus fails to show any prejudice suffered by the referee's consideration of the MDOR letter. Moreover, this court has approved the use of correspondence and other records from tax agencies to establish filing dates. *See In re Mathias*, 495 N.W.2d 413, 414 (Minn.1993) (IRS letter). We conclude that the referee correctly relied on MDOR records in determining filing dates.

We next consider Gurstel's contention that several of the referee's legal conclusions were erroneous. Gurstel questions the referee's conclusion that he violated Minn.R.Prof. Conduct 8.4(b), which provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer." Gurstel argues that although a conviction for a criminal act is not a prerequisite to discipline, the findings of fact must be sufficient to support the conclusion that the attorney committed a criminal act. Gurstel further asserts that because violation of a criminal statute generally requires a showing of scienter, the referee must find that the attorney violated the tax laws.

■ This court has concluded that so long as it is implicit in the recommended discipline and the referee's findings that an

attorney intentionally filed tax returns untimely, the referee need not make an explicit finding. *Mathias*, 495 N.W.2d at 414–15. "Moreover, we have repeatedly stated that an attorney may be disciplined for acts which are criminal but do not result in a criminal conviction." *Id.* at 415. This court has set forth several factors in determining whether an attorney has violated the tax laws. These factors include whether the attorney was aware of when filings and payments were due and whether there was any evidence of economic problems. *Id.; see also In re Tyler*, 495 N.W.2d 184, 185 (Minn.1992). That Gurstel was aware of when filings were due is evinced by his testimony that he has "always known that late filing is not a good thing and it's a violation," and that from "the time that the quarter ended until the time that the filing had to be done I was on [the office manager's] back to be sure that they were filed on time." Gurstel also testified that he failed to pay the taxes when due because "[t]here wasn't sufficient money to pay them." The referee thus correctly concluded that as a matter of law Gurstel failed to timely file the returns in violation of Rule 8.4(b).

■ Gurstel next challenges the referee's conclusion that the failure to timely file tax returns is "conduct that is prejudicial to the administration of justice" in violation of Minn.R.Prof. Conduct 8.4(d). The overwhelming authority of this court establishes that the failure to timely file tax returns violates Rule 8.4(d). *See, e.g., Mathias*, 495 N.W.2d at 415; *Tyler*, 495 N.W.2d at 185; *In re Chrysler*, 434 N.W.2d 668 (Minn.1989). The referee thus correctly concluded that as a matter of law Gurstel violated Rule 8.4(d).

## II.

■ This court has the final responsibility for determining what sanction is appropriate in attorney discipline cases. The purposes of attorney discipline are "to protect the courts, the legal profession, and the public, guard the administration of justice, and deter similar misconduct." *In re Isaacs*, 451 N.W.2d 209, 211 (Minn.1990). In determining the appropriate disciplinary action, this court considers the nature of the misconduct,

the cumulative weight of disciplinary violations, the harm to the public and the harm to the legal profession. *In re Jagiela,* 517 N.W.2d 333, 335 (Minn.1994). In deciding what discipline is appropriate, this court affords great weight to the referee's recommendation. *In re Perry,* 494 N.W.2d 290, 293 (Minn.1992).

Minnesota attorneys have been on notice since at least 1972 that the failure to file tax returns is serious professional misconduct, and that suspension or disbarment is the appropriate sanction. *See In re Bunker,* 294 Minn. 47, 199 N.W.2d 628 (1972). This sanction has been extended to include the failure to file employer's tax withholding returns. *In re Johnson,* 414 N.W.2d 199 (Minn.1987) (18–month suspension imposed). We have previously expressed the "particular concern to this court" with the failure to pay employer's withholding taxes, because an attorney "essentially convert[s] to his own use temporarily money belonging to his employees which he withheld from paychecks and placed in his business checking account." *Tyler,* 495 N.W.2d at 186. We emphasize that the failure to pay employer's withholding taxes is tantamount to taking employees' money for the attorney's own use, breaches the trust established between employer and employee, and calls on governmental resources to enforce compliance with the law by those who are sworn to uphold it.

Gurstel contends that we should not impose any suspension, and that probation is appropriate. Gurstel urges this court to consider several mitigating factors, including his cooperation with the Director's investigation and state and federal tax authorities, his prompt payment of taxes owed to the state, changed office procedures to ensure compliance with tax laws, and the financial difficulties suffered by his firm since 1991. We have rarely granted probation in cases involving the failure to timely file withholding tax returns and to pay the taxes when due. *In re Ylitalo,* 420 N.W.2d 615, 616 (Minn. 1988). Suspension is particularly appropriate where the failure to file and to pay occurs while the attorney is on probation. *Id.* at

617. In order for probation to be appropriate, extreme mitigating circumstances, such as illness, chemical dependency or depression, must be shown to have caused the violation. *See Johnson,* 414 N.W.2d at 202. Gurstel has presented no evidence that would warrant the imposition of probation here.

We have repeatedly imposed suspension for the failure to timely file employer's withholding tax returns and to pay the taxes when due. *See In re Singer,* 499 N.W.2d 467 (Minn.1993) (30–day suspension); *Tyler,* 495 N.W.2d at 184 (30–day suspension); *In re Skonnord,* 422 N.W.2d 726 (Minn.1988) (60–day suspension); *Ylitalo,* 420 N.W.2d at 617 (30–day suspension). These cases evince a tendency, although by no means a bright-line rule, to impose a 30–day to 60–day suspension for the failure to timely file employer's withholding tax returns and to pay the taxes when due. Based on such precedent, the referee was justified in recommending a 60–day suspension. However, the Director, citing *Johnson,* urges us to triple the referee's recommendation and to impose a six-month suspension.

We share the Director's concern that the failure to timely file employer's withholding tax returns and to pay the taxes when due is serious professional misconduct. We also recognize the principle that where an attorney is before us for a second time on a disciplinary charge, the discipline to be imposed must be reviewed in light of the earlier misconduct. *In re Getty,* 452 N.W.2d 694, 698 (Minn.1990). However, the Director puts too much weight on *Johnson,* because in *Johnson,* the attorney had twice been placed on probation, making his tax violations a "third strike." [2] *Johnson,* 414 N.W.2d at 200–01. The underlying tax violations were also more serious than Gurstel's, justifying an 18–month suspension period. *Id.* at 201. The Director's argument that a 30–day to 60–day suspension may no longer be sufficient to deter attorneys from such misconduct is not without merit. But in recognition of our past practice, this court will impose a 60–day suspension. However, it should be noted that for violations occurring hereafter, attorneys who engage in similar professional

---

**2.** Gurstel was first placed on probation for trust account violations, and subsequently committed tax violations. We concluded in a similar case

that a 30–day suspension was proper. *Ylitalo,* 420 N.W.2d at 617.

misconduct should anticipate that, when disciplinary action is taken, the discipline may be more severe than that imposed in this case.

Gurstel also argues that he should be eligible for reinstatement through the affidavit process, rather than through a formal reinstatement proceeding, as ordered by the referee. Gurstel cites Rule 18(f), RLPR, which provides that "[u]nless otherwise ordered by this Court, [formal reinstatement proceedings] shall not apply to lawyers who have been suspended for a fixed period of ninety (90) days or less." We agree with the referee's recommendation in this case.

We find that the appropriate sanction for Gurstel's conduct is a 60–day suspension. Accordingly, we order:

1. That respondent, Normal K. Gurstel, is hereby suspended from the practice of law for 60 days, commencing 14 days from the date of this order;

2. That respondent comply with the requirements of Rule 26, Rules on Lawyers Professional Responsibility;

3. That respondent shall pay to the Director the sum of $750 in cost and disbursements pursuant to Rule 24, Rules on Lawyers Professional Responsibility;

4. That, if and when respondent seeks reinstatement, it shall be through a formal reinstatement proceeding pursuant to Rule 18, Rules on Lawyers Professional Responsibility, provided that he has shown the Director that he has timely filed his state and federal employer's withholding tax returns and paid the taxes when due; and

5. Following reinstatement, respondent shall be on unsupervised probation for a period of two years subject to the following conditions:

a. That he timely file all state and federal employer's withholding tax returns and pay the taxes when due;

b. That during the time his probation is in effect, he affirmatively report to the Director, within ten days of the due date of each employer's withholding tax return, compliance with the filing requirements described above and, upon request, provide the Director with tax authorizations necessary for the Director to obtain verification from state and federal authorities that employer's withholding tax returns have been filed and the taxes have been paid;

c. That he abide at all times by the Minnesota Rules of Professional Conduct.

So ordered.